BOSTON, CONCORD & MONTREAL RAILROAD *v.* GILMORE & a.

The locomotive engines and freight and passenger cars of a railroad corporation are liable to attachment, when not in actual use, like other personal property.

IN TRESPASS *de bonis asportatis,* it is agreed that the plaintiffs are a corporation, duly established by the laws of this State, with the powers and duties incident to railroad corporations, and have duly adopted the provisions of chapter 128 of the Pamphlet Laws, and of the laws in addition and amendment thereto.

On the 18th day of December, 1855, a deputy of Hill, one of the defendants, who was sheriff of Belknap county, on a writ in favor of said Smith against said corporation, returnable at the February term of the Supreme Judicial Court for the county of Merrimack, attached, in said county of Belknap, six passenger and freight locomo-

tives, and eight freight cars, and other property named in the declaration, all belonging to the plaintiffs, and in daily use by them for transporting freight and passengers over their railroad from Concord to Wells River. The locomotives, cars and other property constituted the largest part of the ordinary rolling stock of the plaintiffs, and without the same the plaintiffs had not sufficient rolling stock for the transaction of its ordinary business.

On the same day the officer placed keepers in possession of said property, but allowed the same, until its removal, as hereafter stated, to be used by said plaintiffs, as it had been before the attachment, except that it was used under the supervision of said keepers.

On the 24th of December, 1855, the officer removed said property, and immediately delivered it to four receiptors, who were directors of said corporation and composed a majority of its board of directors, taking their receipt for the same, to be returned to said officer, or some proper officer, on demand, the property being valued at $55,500 in said receipt. The receiptors have permitted the property to be used by the plaintiffs ever since, under the immediate supervision and control of their agents, appointed for that special purpose.

The other defendants acted as servants of the officer in taking the property as aforesaid.

It was agreed that judgment be rendered according to the opinion of the Supreme Judicial Court upon the foregoing case; and if rendered for the plaintiffs for damages, to be assessed by an auditor to be appointed by the court; reserving to either party the right to have the case discharged, and to have a trial by jury.

*H. A. Bellows*, for the plaintiffs.

The question raised by this case is, whether the rolling stock of the railroad, necessary for its immediate use, is liable to attachment and sale on execution.

It may be regarded as settled in this State, that a railroad corporation has not the general power of disposal of its property and franchises, which is incident to the absolute right of property. To be sure, the property is vested in the corporation, but it is in trust for the public. *Inhab. of Worcester* v. *Western R. R.*, 4 Met. 564 ; *Pierce* v. *Emery*, 32 N. H. 485, 517, 519.

And this principle extends to all the property of the corporation which is needed in the execution of its public duty. It is all in fact to be regarded as an entire thing. See cases above cited, and also *Willink* v. *Morris Canal Co.*, 3 Green's Ch. 377.

The nature of such corporations, the object of their creation, and the duties imposed upon them, show that this must be the true doctrine.

By the general law the right of way is taken by the State and leased to the corporation, for a term not less than one hundred nor more than two hundred years, with the right to construct a railroad for public use ; and at the expiration of the term the right of way reverts to the State, in which case the State is to make due compensation, unless the lease is renewed. Comp. Stat., chap. 150, secs. 2, 3, 4, 25.

By sections 28 and 29, after twenty years the State may resume the right and privilege of the corporation in such railroad, on giving one year's notice, and paying the expenditures not received by it, with ten per cent. interest. And the corporation is required to keep exact accounts of such expenditures and receipts, and report to the legislature. Under this provision it is a necessary inference that the State will take the whole property, real and personal, as an entire thing.

By section 30, of the same chapter, railroad corporations are required to carry and transport soldiers and munitions of war of the State, free of charge, and all other property of the State and of the United States, at such rates as the governor and council shall establish.

Section 32 provides for the use of the road by others, under the directions of the legislature. Section 33 provides that such corporation shall not discontinue its road, nor neglect to keep it in repair, nor omit to discharge its duties in carrying passengers, merchandize and freight, and subjects the corporation to indictment for such neglect.

By the second section of the act incorporating the Boston, Concord and Montreal Railroad, of December, 1844, the corporation is required to provide suitable and proper engines and cars for the conveyance of passengers and property over their railroad, and to cause the engine and cars to be run each way at least once a day.

It is clear, from these provisions, that railroads are regarded as important public works, and designed for the public use and benefit.

To accomplish the object, the State furnishes the right of way, reserving, under certain limitations, the right to take the entire work, on making compensation. The corporation is required at all times to be provided with cars and engines, and all necessary material for the public use, and the neglect is punished by indictment, and for the discharge of their public duties compensation is made by a grant of tolls. In the execution of this trust the corporation is empowered to purchase and hold such property, real and personal, as may be necessary ; and this of course implies the power to make such changes in the rolling stock, including the selling off old material and the purchase of new, as the interest of the road may demand.

But in all this the corporation acts as trustee for the public, and has no right to deprive itself of the power of discharging its public duties. In this respect the real and personal property, needed for immediate use, must stand upon the same footing. Both are equally essential, and no solid distinction can be pointed out ; and so are the cases *Worcester* v. *Western Railroad,* 4 Met. 564 ; *Pierce* v. *Emery,* 32 N. H. 485. In the former case it is held that the real

property of the corporation, including dépôt buildings, car-houses, &c., were not subject to taxation, on the ground that they were appropriated to the public use. If that be the law, then the engines and cars which are sheltered by such car and engine houses are also appropriated to the public use.

It is true that in *Pierce* v. *Emery* the court say that there seems to be nothing in the nature of the business of the railroad or their relations to the public that would prevent their making a valid mortgage of their personal property; and it is said, as a reason, that instead of disabling the road from performing its public duty, it might assist in aiding it.

So far as a pledge or mortgage by the corporation is in furtherance of the objects of its creation — that is, the discharge of its public duty — the idea is consistent with the doctrine that the corporation is but a trustee; and upon the same ground that it is held in the same case that after the mortgage there is an implied authority in the directors to manage the road, and for that purpose to buy and sell in the usual course of business. See pp. 514, 515. But an absolute sale of the whole of the rolling stock, with the purpose of disabling the corporation to perform its public duties, or having that effect in contemplation, would be a very different thing, and not, as we conceive, within the scope of its power as trustee.

In *Dispatch Line* v. *Bellamy Co.*, 12 N. H. 205, 229, it is held that a general agent of a manufacturing company could not mortgage its machinery, and thereby suspend its operations, or place it at the will of the mortgagee. See, also, *Stow* v. *Wyse*, 7 Conn. 219; Angell & Am. on Corp., 3d Ed. 292.

Such a mortgage would be destructive of the objects and ends of such a corporation, and therefore the agent could not make such mortgage. The court, however, intimate that the agent might perhaps pledge manufactured goods.

The corporation no doubt might mortgage the machinery, but then it was a mere private corporation; while in the case of a railroad the corporation hold the property in trust for the public; and any disposition of it, destructive of the objects of the trust, would be illegal, and might, we think, be restrained by injunction. In the case of a manufacturing corporation, the agent is the trustee of the corporation, and his power is limited to such things as are consistent with the objects of the corporation. In the case of railroads, the corporation is a trustee for the public, and is under the same limitation.

If the corporation has the power to sell or mortgage, it would by no means follow that creditors might take and sell the property on execution. The power of such corporation to make a valid mortgage of its personal property must be limited to mortgages made to assist it in performing a public duty; and although, in the exercise of that power, some discretion may be conferred upon the trustees, that discretion cannot be transferred to another, and can furnish no ground for claiming that a creditor can attach such property without the consent of the corporation.

The authority to attach the franchise of a corporation, conferred by section 15, of chapter 195 of the Compiled Statutes, applies only to turnpike corporations, as is evident from the provisions of section 13, of chapter 207. This provision was in existence long before railroads. Besides, the general authority applies to franchises alone, and it is well settled here that no mortgage or sale of such franchise is good without authority of the legislature. And it is worthy of remark that our legislation, so far as it has gone, proceeds upon the ground that the franchise and property of a public corporation is an entire thing, as is shown by the legislation above cited in reference to turnpike corporations.

The general provision in regard to attachments limits

the subjects to such property as may be sold on execution, (Comp. Stat., chap. 195, sec. 1,) and no provision is made for selling the franchise and property of railroad corporations.

If the property of such corporations may be attached, it would be in the power of any one, at any time, however urgent the public wants, in time of war or otherwise, to disable a corporation from discharging its public duty, and this upon a claim either real or imaginary. Nor can any well founded distinction be made in this respect between the real and personal property.

If an attachment is valid, the creditor is entitled to the usual means of making it effectual, as in the other cases; and this, we think, would be wholly inconsistent with the nature and objects of such corporations, and with the interest of the public in such railroads, which must be regarded as easements of the most important character.

The counsel subsequently cited the case of the Farmer's Loan and Trust Co. against Hendrickson, in the New-York Supreme Court for the Second District. It was an action against a sheriff for taking on execution certain cars, &c., of the Flushing Railroad Co., which had been mortgaged to the plaintiff, with the track, dépôts, &c. The mortgage was recorded as a mortgage of realty, but was not recorded in the office of any town-clerk, as the law requires mortgages of personalty to be recorded. If the cars were regarded as part of the real estate, the mortgage was valid as to them, but if personal it was inoperative, for want of a proper record. And it was held, that as the cars are a necessary part of the entire establishment, which, without them, would be inoperative and valueless; as their wheels are fitted to the rails; as they are constantly upon the rails, and, except in case of accidents, or when taken off for repairs, no where else; as they are not moved off the land of the company; are peculiarly adapted to the use of the railway, and in fact cannot be applied to

any other purpose; are not the objects of general trade; are permanently used on the particular road where they are employed, and are seldom changed to any other, they were to be regarded as fixtures, and parts of the real estate. They therefore passed by the mortgage of the realty, and were not liable, as against the mortgagees, to be levied upon as personal estate.

*Chandler*, for the defendants.

" Corporations have, by our laws, a right to alien and dispose of their lands and chattels, unless restrained by their charters or by statute. Independently of positive law, they have the absolute *jus disponendi*, neither limited as to objects nor circumscribed as to quantity." Ang. & Am. on Corp., sec. 187; 2 Kent's Com. 227; Pierce on Railroad Law 513; *Flint* v. *Clinton Co.*, 12 N. H. 435.

At common law, also, and by our practice, all the property of a corporation may be attached, or seized and sold on execution. Bac. Ab., Corp., E; Ang. & Am. on Corp., sec. 640; *Regina* v. *Victoria Park Co.*, 1 Ad. & E., n. s, 289; *Maryland* v. *Bank of Maryland*, 6 G. & J. 220; *Slee* v. *Bloom*, 19 Johns. 475; Am. Law Mag., Jan., 1845, p. 255.

The plaintiff, however, asserts that the ordinary rule relative to corporations does not apply in this case, for the reason that railroads are public corporations, whose property is consecrated to public uses, and therefore, on grounds of public policy, cannot be taken in execution for the debts of the corporation.

To this the defendants reply, that railroads in this State are not public corporations, in any sense that will prevent their personal property from being taken on execution. *Dearborn* v. *Boston, C. & M. R. R.*, 24 N. H. (4 Foster) 189; *Eustis* v. *Parker*, 1 N. H. 275; *Dartmouth College* v. *Woodward*, 1 N. H. 117; S. C., 4 Wheat. 630, 632, 636, 637, 660, 661, 663, 665, 666, 669, 670, 671, 672, 682, 704; *Pierce* v. *Emery*, 32 N. H. 504; Am. Law Mag., Jan., 1845, p. 255;

*Trustees* v. *Auburn and Rochester R. R.*, 3 Hill 567 ; *Doe* v. *Poole*, 1 Ad. & E., n. s, 700 ; *State v. New-Orleans Gas, &c. Co.*, 2 Rob. 532; *State* v. *Mexican Gulf R. W.*, 3 Rob. 573 ; *Haven* v. *Emery*, 33 N. H. 66 ; *Enders* v. *Board of Public Works*, 1 Grat. 364; *State* v. *Rines*, 5 Ind. 297 ; Pierce R. R. Law, chap. 20 ; Ang. & Am. Corp., sec. 641, note ; *Thorpe* v. *R. & B. Railroad*, 27 Vt. 155 ; *Petition of Mt. Washington Road*, Coös, Dec., 1856 ; *Lebanon* v. *Olcott*, 1 N. H. 345 ; *Bacchus* v. *Lebanon*, 11 N. H. 20 ; *Boston and Roxbury Mill* v. *Newman*, 12 Pick. 476 ; Monthly Law Reporter, September, 1856, p. 257.

Railroads are declared public corporations by the law of the State only to enable them to obtain the right of way for their road, and to obviate the constitutional objection against taking private property for private purposes, and not to relieve the corporations from their ordinary duties and liabilities. *Dearborn* v. *Boston, C. & M. R. R.*, 24 N. H. (4 Foster) 189, and cases cited.

And the various statutes cited by the plaintiff's counsel, imposing certain duties and obligations upon railroads, are all to be construed in subordination to the right of the creditors of such corporations to take their personal property in execution for the payment of their debts.

BELL, J. We have carefully examined the authorities cited for the plaintiff, and are of opinion that they do not support the ingenious propositions of the counsel for the plaintiff, which we understand to be, that the property owned by railroad corporations, and which is necessary for the discharge of their public duties, is vested in them in trust for the public; that the franchise of the corporation is the principal thing, to which the track, dépôts, engines, cars, and the like, are mere incidents, and that all these constitute one entire thing, so connected that the cars and engines, &c., cannot be severed from their connexion by an attachment, or seizure on execution, and held as

security, or sold and applied as personal property ordinarily may be, to the payment of the corporate debts.

The case of *Worcester* v. *Western R. R.*, 4 Met. 564, though it has some general expressions, such as are quoted in the argument, relative to the property of railroad corporations being vested in them in trust for the public, yet is not an authority for the positions assumed in this case. The question before the court was, whether the property of a railroad, required for the discharge of their duties, was liable to be .taxed in the town in which it is situate; and the decision was that the property so far partook of the character of public property, or property held in trust for a public use, that, like town-houses, school-houses, bridges, and the like, it was not a subject of taxation. The language used may go further, but this is the whole point decided, and it manifestly has no bearing upon the question before the court in this case. The case related to the roadway, dépôts and other real estate, and not to personal property; and it by no means follows that because town-houses, school-houses, and the like, are so far public that they are not liable to taxation, that they would not be liable to attachment and levy on execution for the debts of the town or district by which they were owned. By our law the estate of towns may clearly be taken on execution, like that of other corporations. Rev. Stat., chap. 198, sec. 1.

The case of *Pierce* v. *Emery*, 32 N. H. 503, is not an authority for the positions assumed here. It is there settled that, as the general rule, corporations have power to sell their property, real or personal, and to mortgage it for the security of their debts; but as these railroad corporations are created to answer a public object, and are bound to the State for the performance of a public duty, they can do no act which would amount to a renunciation of their duty to the public, or which would directly and necessarily disable them from performing it. They cannot, therefore, convey away their franchise and corporate rights, nor per-

haps the track and right of way, which they take and hold for the necessary use of their road, unless expressly authorized by the legislature. When so authorized, a mortgage of the whole franchise and property of the corporation would be valid, and might even extend to property subsequently acquired. But there was nothing in the nature of their business or in their relations to the public which should prevent them from making a valid mortgage of their personal property, not affixed to the road, though used in operating it. We are unable to see any principle of public policy or convenience which should allow such corporations to mortgage their cars and engines, which would not be equally strong to allow a creditor of the corporation to secure a lien substantially of the same kind by an attachment. In either case the debt must be paid, or the creditor, by suitable proceedings, may cause the property to be applied, by sale or otherwise, to the payment of the debt, and the inconvenience of the public or to the corporation is not materially greater in the one case than in the other. It would seem, then, that so long as the law allows to the corporation the right to deprive themselves by a mortgage, in a greater or less degree, of the power of readily performing their public obligations, and allows them to contract debts, which, in the case of others, may be secured by attachment, there can be little reason in denying to the creditor of a railroad the ordinary right to secure his debt by attachment; especially when the debtors can readily relieve themselves from the inconvenience by payment or security.

The case of *Willink* v. *Morris Canal Co.*, 3 Green's Ch. R. 377, is no authority for the position of the plaintiff. It is there held that a mortgage, made by authority of the legislature of New-Jersey, " of the Morris Canal, with all its privileges, appendages and appurtenances, and all the property and chartered rights of said canal," covered the entire canal, though a part of it was constructed after the

execution of the mortgage, and upon lands subsequently acquired.

In neither of these cases is there anything to sustain the doctrine that the franchise of the corporation is the principal thing, to which the right of way, track, dépôts, engines, cars, &c., are mere incidents, and from which they cannot be separated; nor the doctrine that these things constitute one entire thing, which must be sold, mortgaged, attached, or levied upon together; nor the doctrine that the cars and engines of a railroad corporation, when necessary for the discharge of its public duties, become in any way so connected with the franchise that they cannot be attached.

The case of the *Farmers' Loan and Trust Co.* v. *Hendrickson,* reported in the N. Y. Evening Post of January 27, 1858, is inconsistent with either of these doctrines, because it holds that the cars, engines, &c., of railroad corporations are fixtures of the ' real estate; that is, of the roadway and track. The plaintiffs were holders of a mortgage, made by the Flushing Railroad to them, of their track, buildings, rails, purchased or to be purchased, engines, cars, &c. The defendant, as sheriff, levied an execution against the railroad on some of the engines and cars. The principal question was, if the property was to be considered, as between the mortgagees and execution creditors, as fixtures of the road. *Strong,* P. J., after a full discussion, arrives at the conclusion that the cars, engines, &c., are properly to be regarded as fixtures, and so not liable to seizure on execution as against the mortgagees; and, for the same reason, that the mortgages need not be recorded by the town-clerk, which is made necessary by the statute to the validity of mortgages of personal property. The case goes far beyond any other decision, and it seems to us cannot be sustained. The reasons assigned for this conclusion are not only inconclusive, but incorrect in fact. It is said " that railway cars are a necessary part

of the whole establishment, without which it would be inoperative and valueless. Their wheels are fitted to the rails; they are constantly upon the rails, and, except in cases of accidents, or when taken off for repairs, no where else; they are not moved off the land belonging to the company; they are peculiarly adapted to the use of the railway, and in fact cannot be applied to any other purpose; they are not, like farming utensils, and possibly the machinery in factories, and many of the movable appliances in stores and dwellings, the objects of general trade; they are permanently used on the particular road where they are employed, and are seldom if ever changed to any other." All these things are at least as true of the carts, plows, &c., used on a farm with reference to the farm, yet no one ever imagined them to be fixtures. And to those who habitually see the same cars and often the same engines running from the line of Canada to Boston, over roads owned by several corporations, the facts assumed appear entirely groundless. No particular cars, nor cars owned by the road, are necessary to operate it, since many roads are operated with the cars of other corporations. The wheels are not fitted to any road in particular, but may be equally useful on any road of similar gauge; the engine and cars are not kept on the road, or lands of the same company, but are often used on other roads, and they are subjects of trade as much as coaches or steamboats.

The case settles nothing as to the rights of the railroad company and their execution creditor,—the rights of purchasers and others, as to things claimed as fixtures, being materially different.

The idea that property, either real or personal, may become a mere incident to a franchise, so that the franchise and property shall constitute an entire thing, is not found in any of the books of the common law, so far as we are aware. The right to a ferry is such a franchise, and the boats required for the transportation of passengers and

their property, are entirely indispensable for the discharge of the public duties of the owner; yet we have found no instance where it has been claimed that such boats were exempt from seizure in discharge of the owner's debts.

The statute of 1816, relating to levies on the franchise of taking toll, and the Revised Statutes on that subject, give no countenance to such an idea; for they provide that by the sale of the franchise the toll-houses and gates shall pass to the purchaser, but the other rights of the corporation shall not be affected.

The property of individuals who owe duties to the public is not for that reason exempted from liability to the ordinary process of law, except so long as it is in actual use in the discharge of that duty. Such is the case of the contractor to carry the mail. It has never been held that the steamboat or coach and horses used in the conveyance of the mail were exempt when not in use. *Briggs* v. *Strange*, 17 Mass. 409; *Potter* v. *Hall*, 3 Pick. 368.

Considering, then, that it is not necessary, for the discharge of the public duties of these corporations, that they should be the owners of cars or engines — many such roads being operated with the cars of other corporations; that it is a matter of great uncertainty what articles of the personal property of such corporations are necessary for the discharge of their public duties; that no means exist by which it can be determined what is necessary, or otherwise; that it must be very difficult for courts to lay down any definite rule by which officers can be guided, who in such cases must decide at their peril; it seems to be neither judicious nor expedient to establish an exemption of this kind, unless it is done by the direct action of the legislature, who can provide the proper rules and safeguards for the safety of officers as well as of parties.

The court being of opinion that the property here in question was liable to be attached, there must be

*Judgment for the defendant.*